UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMES HITCHCOCK,

      Petitioner,

v.                                                          CASE NO. 6:08-cv-1719-Orl-31KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

**ORDER**

In 1976, a thirteen year old girl was raped and murdered in Orange County, Florida.

Petitioner, James Hitchcock, was convicted of that murder and sentenced to death. Now,

thirty-six years later, and following his fourth penalty phase trial, Petitioner seeks habeas

relief from this Court. (Doc. 15).[1]

**I.**    *Statement of the Facts*

The facts adduced at trial, as set forth by the Supreme Court of Florida, are as

follows:

> A jury convicted Hitchcock of first-degree murder for the death of his
> brother's thirteen-year-old stepdaughter under an indictment charging one
> count of premeditated murder. After weighing the aggravating and
> mitigating factors, the trial court agreed with the jury's recommendation and
> imposed the death sentence. We affirm both the conviction and sentence.
>
> Unemployed, ill, and with no place to live, Hitchcock moved in with

_____

[1] Respondent's Response to the Amended Petition may be found at Doc. 19 and
Petitioner's Reply at Doc. 26.

his brother Richard and Richard's family two to three weeks before the murder.  On the evening of the murder, appellant watched television with Richard and his family until around 11:00 p.m.  He then left the house and went into Winter Garden where he spent several hours drinking beer and smoking marijuana with friends.

According to a statement Hitchcock made after his arrest, he returned around 2:30 a. m. and entered the house through a dining room window.  He went into the victim's bedroom and had sexual intercourse with her.  Afterwards, she said that she was hurt and was going to tell her mother.  When she started to yell because he would not let her leave the bedroom, Hitchcock choked her and carried her outside. The girl still refused to be quiet so appellant choked and beat her until she was quiet and pushed her body into some bushes.  He then returned to the house, showered, and went to bed.

At trial Hitchcock repudiated his prior statement.  He testified that the victim let him into the house and consented to having intercourse. Following this activity, his brother Richard entered the bedroom, dragged the girl outside, and began choking her.  She was dead by the time appellant got Richard away from her.  When Richard told him that he hadn't meant to kill her, Hitchcock told him to go back inside and that he, the appellant, would cover up for his brother.  According to Hitchcock, he gave his prior statement only because he was trying to protect Richard.

*Hitchcock v. State*, 413 So. 2d 741, 743 (Fla. 1982) ("*Hitchcock I*").  After the conclusion of

Petitioner's third resentencing hearing, the jury recommended the death penalty by a vote

of ten to two.  *Hitchcock v. State*, 755 So. 2d 638, 640 (Fla. 2000).  The trial court sentenced

Petitioner to death, finding the following aggravating circumstances:  (1) the crime was

committed by a person under a sentence of imprisonment; (2) the crime was committed

during commission of the felony of sexual battery; (3) the crime was committed for the

purpose of avoiding arrest; and (4) the crime was especially heinous, atrocious, or cruel.

*Id.*  The trial court found only one statutory mitigating factor, Petitioner's age at the time

of the crime.  *Id.*  The trial court also found the existence of several nonstatutory mitigating

circumstances, and assigned very little weight to six of those circumstances, "some weight" to nine of those circumstances regarding Petitioner's background, and also gave some weight to eight circumstances regarding Petitioner's positive character traits. *Id.* at 640-41.

## II.     *Procedural History*

Petitioner was indicted on one count of first degree murder on August 9, 1976 (Ex. A-1 at 1).[2] A penalty proceeding was conducted, and a majority of the jurors recommended that the trial court impose the death penalty (Ex. A-11).  Thereafter, the state court found three aggravating factors: (1) the murder was committed while Petitioner was engaged in the commission a sexual battery, (2) the murder was committed to avoid being arrested, and (3) the murder was especially heinous, atrocious, or cruel. It also found one statutory mitigating circumstance (Ex. A-2 at 194-98).   The trial court followed the jury's recommendation and sentenced Petitioner to death.  *Id.* at 198.

On direct appeal, Petitioner raised eight claims (Ex. B).  The Supreme Court of Florida affirmed Petitioner's conviction and sentence.  *Hitchcock I*, 413 So. 2d at 748. Petitioner filed a petition for writ of certiorari with the Supreme Court of the United States (Ex. F), and the petition was denied (Ex. F-3).  On April 21, 1983, the Governor of the State of Florida denied Petitioner clemency and signed a death warrant for Petitioner's execution (Ex. G-1 at 26).  On May 2, 1983, Petitioner filed a motion for post-conviction relief

---

[2]References to the record will be made by citing to the particular volume and page of the advanced appendix.  For example, "Ex. A at 1" refers to page one of the volume labeled Exhibit A.

pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure. *Id.* at 29.[3] The trial court

summarily denied the motion. *Id.* at 202-03. On appeal, the Supreme Court of Florida

affirmed the lower court's summary denial of the post-conviction motion. *Hitchcock v.*

*State*, 432 So. 2d 42 (Fla. 1983) ("*Hitchcock II*").

On May 13, 1983, Petitioner filed a federal petition for writ of habeas corpus in case

number 6:83-cv-357-Orl-11 (Ex. L-2). This Court denied the petition. *Id.* Petitioner

appealed, and the Eleventh Circuit Court of Appeals affirmed. *Hitchcock v. Wainwright*, 745

F.2d 1332 (11th Cir. 1984). Petitioner filed a petition for rehearing *en banc*, which was

granted (Exs. O-2 & O-3). The Eleventh Circuit again affirmed this Court's denial of

habeas relief. *Hitchcock v. Wainwright*, 770 F.2d 1514 (11th Cir. 1985). Petitioner filed a

petition for writ of certiorari with the Supreme Court of the United States, which was

granted in part. *Hitchcock v. Wainwright*, 476 U.S. 1168 (1986). The Supreme Court vacated

Petitioner's death sentence because the penalty phase jury and judge did not consider

nonstatutory mitigating circumstances and remanded for a new penalty proceeding.

*Hitchcock v. Dugger*, 481 U.S. 393 (1987).

A second penalty phase hearing was held from February 17, 1988, through February

20, 1988 (Exs. Q-1 - Q-7). The jury recommended death by a vote of seven to five (Ex. Q-7

at 1254). The trial court found four aggravating factors, one statutory mitigating factor,

and several nonstatutory mitigating factors (Ex. Q-11 at 1516-21). The trial court concluded

---

[3]Rule 3.851, which governs motions for post-conviction relief filed by prisoners
sentenced to death, was not enacted until 1993.

that the aggravating circumstances outweighed the mitigating circumstances and followed the jury's recommendation by sentencing Petitioner to death. *Id.* at 1521. Petitioner appealed, and the Supreme Court of Florida affirmed the death sentence. *Hitchcock v. State*, 578 So. 2d 685 (Fla. 1990) ("*Hitchcock III*"). Petitioner filed a petition for writ of certiorari with the Supreme Court of the United States (Ex. V), which was denied. *Hitchcock v. Florida*, 502 U.S. 912 (1991). Petitioner moved for rehearing (Ex. V-4), and the Court granted rehearing and remanded the case for reconsideration in light of *Espinosa v. Florida*, 505 U.S. 1079 (1992).[4] *Hitchcock v. Florida*, 505 U.S. 1215 (1992). On remand, the Supreme Court of Florida vacated Petitioner's death sentence and remanded the case for a new penalty phase proceeding. *Hitchcock v. State*, 614 So. 2d 483 (Fla. 1993) ("*Hitchcock IV*").

A third penalty phase proceeding was conducted from August 23, 1993, through August 30, 1993 (Exs. X-1 - Ex. X-5). The jury recommended death by a vote of twelve to zero (Ex. X-5 at 857). Thereafter, the trial judge conducted a hearing pursuant to *Spencer v. State*, 615 So. 2d 688 (Fla. 1993), after which it again found four aggravating factors, one statutory mitigating factor, and several nonstatutory mitigating factors (Ex. X-5 at 875-76); (Ex. X-8 at 428-33). The trial court followed the jury's recommendation and sentenced Petitioner to death (Ex. X-8 at 428-33). Petitioner appealed, and the Supreme Court of Florida reversed Petitioner's death sentence and again remanded for a new penalty phase. *Hitchcock v. State*, 673 So. 2d 859 (Fla. 1996) ("*Hitchcock V*").

---

[4]In *Espinosa*, the Court found that the Florida jury instruction on the heinous, atrocious, or cruel aggravating circumstance was vague. 505 U.S. at 1081-82.

On remand, a fourth penalty phase proceeding was conducted between September 9, 1996, and September 11, 1996 (Exs. Z-6, Z-7, Z-18, & Z-19).  The jury recommended by a vote of ten to two that the trial court impose the death penalty (Exs. Z-7 at 297).  On October 8, 1996, the trial court held a *Spencer* hearing (Ex. Z-9) and found four aggravating factors, one statutory mitigating factor, and eleven nonstatutory mitigating factors (Exs. Z-10; Z-16 at 1049-56, 1111-18).  The trial court concluded that the aggravating circumstances outweighed any mitigating circumstances and as such, followed the jury's recommendation and sentenced Petitioner to death.  *Id.*  On appeal, Petitioner raised seventeen claims (Ex. AA).  The Supreme Court of Florida affirmed Petitioner's death sentence.  *Hitchcock v. State*, 755 So. 2d 638 (Fla. 2000) ("*Hitchcock VI*").

Thereafter, Petitioner filed a motion for post-conviction DNA testing pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure (Ex. FF-2).  The trial court denied the motion.  *Id.* at 115.  Petitioner appealed, and the Supreme Court of Florida affirmed the denial of Petitioner's Rule 3.853 motion.  *Hitchcock v. State*, 866 So. 2d 23 (Fla. 2004) ("*Hitchcock VII*").  Petitioner subsequently filed a second amended Rule 3.851 motion for post-conviction relief, alleging thirteen claims (Ex. KK-10).  The trial court held an evidentiary hearing on the claims (Exs. KK-5 - KK-9), after which it denied the motion (Ex. KK-12 at 1117-31).  Petitioner also filed a petition for writ of habeas corpus alleging ineffective assistance of appellate counsel (Ex. OO).  The Supreme Court of Florida denied the habeas petition and affirmed the lower court's denial of the post-conviction motion.  *Hitchcock v. State*, 991 So. 2d 337 (Fla. 2008) ("*Hitchcock VIII*").  The instant amended federal

6

habeas petition followed.

## III.    *Governing Legal Principles*

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28

U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA").  *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *Penry v. Johnson*, 532 U.S.

782, 792 (2001).  The AEDPA "establishes a more deferential standard of review of state

habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent

federal habeas 'retrials' and to ensure that state-court convictions are given effect to the

extent possible under law."   *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v.*

*Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of

state-court rulings is highly deferential and that state-court decisions must be given the

benefit of the doubt).

### A.    *Standard of Review Under the AEDPA*

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009); *Brown v. Payton*, 544

U.S. 133, 141 (2005).  The phrase "clearly established Federal law," encompasses only the

7

holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the United States Supreme Court precedent "in existence at the time the conviction became final").

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

8

B.      *Standard for Ineffective Assistance of Counsel*

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[5]  *Id.* at 687-88.  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689-90.  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.  Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy.  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those

---

[5]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Additionally, it is well established that a defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). The Eleventh Circuit Court of Appeals has applied the United States Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987).

### C.    Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)    the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)    (I)    there is an absence of available State corrective process; or
> >
> > (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must

11

> afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.*; *see also Henderson*, 353 F.3d at 898 n. 25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*

12

*v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

Additionally, when a state court requires a prisoner to raise ineffective assistance of trial counsel claims in collateral proceedings, a prisoner may establish cause for the default of an ineffective assistance claim when (1) the state court did not appoint counsel in the initial-review collateral proceeding or (2) if counsel was appointed in the initial-review collateral proceedings but failed to raise the claim.  *Martinez*, 132 S. Ct. at 1318. However, once cause is established, "a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate the claim has some merit."  *Id.*  (citations omitted).

## IV.    *Analysis*

### A.    *Ground One*

Petitioner claims that he was denied his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution during his re-sentencing proceeding because of improper statements made by the prosecution during closing arguments (Doc. No. 15 at 11-12).  The Court will address each alleged error in turn.

#### 1.    *Prosecutor's Statements Regarding Petitioner's Background and Childhood Poverty*

Petitioner contends that the following argument was improper:

PROSECUTOR:        This isn't a crime where someone was trying to gain money or trying to get back at society for its evil.  This is a rape of a little girl.  She didn't do anything to him. She didn't cause his poverty.  This wasn't him striking back.  His poverty and his living circumstance are not mitigating in this case at all, because they don't give us any understanding of why he did what he did.  They

|                 | don't reveal anything about his character. |
|-----------------|--------------------------------------------|
| PETITIONER:     | Objection.  Misstating the law as to mitigation. |
| PROSECUTOR:     | It's my argument.                          |
| COURT:          | I'm going to overrule the objection.       |
| PROSECUTOR:     | The defendant lived through his father's death, and that was a very traumatic experience for his entire family, and you should feel some sympathy for a seven year old who had to watch his father die.  Is it mitigating?  Does it give you any insight into why he did what he did?  It doesn't.  It just doesn't tell us anything.  I submit to you sheer sympathy isn't mitigation.  Mitigation is something that explains the crime or makes us understand the crime or makes the defendant less morally culpable for the crime in some way, not just something that makes us feel sorry for him.  If this was about sympathy, it would be a totally different process.  But we see in the Defendant's own family that people overcome.  The human spirit can overcome virtually anything, and though the psychologist may not agree with this Pollyanna that I'm speaking, the Defendant's mother and family, as an example, as hard as it is, there are two ways to go.  You work hard, you make a life or you become a criminal. The defendant made that choice, I submit that is not mitigating. |

(Doc. No. 15 at 12-13) (quoting Ex. Z-7 at 258-60).  Petitioner further points to the following

argument to support his claim that the State made improper comments regarding the

mitigation evidence that the jury could consider:

> You ask yourself, am I reasonably convinced that fact A, that the defense is asking me to believe in mitigation is true.  If you find it's not true and you're not convinced, then you throw it out and you don't consider it.  If you find that it is proven, you <u>ask yourselves the next question, is it mitigating, is this the kind of fact that should have any weight</u> in deciding whether somebody lives or dies for a crime like this.

If you find – you may find a fact is proven.  You may find, oh, yeah, the defendant received a spelling b medal when he was four, you may find that fact proven, but you may say, so what, doesn't matter, has no place in this kind of case so you can throw it out.

If you find the fact proven <u>and you find it is somehow mitigating, then</u> comes the hard part.  <u>Then you have to weigh it</u>.  You look at all the aggravating circumstances proven and you look at all the mitigating circumstances proven and you ask yourselves, which of the two is of greater weigh.  Which of the two is more significant in deciding the punishment for this kind of crime.

*Id.* at 13-14 (quoting Ex. Z-7 at 238-239) (emphasis supplied by Petitioner).

Petitioner raised this issue on direct  appeal.  The Supreme Court of Florida determined that the trial court had erred under both Florida law and *Lockett v. Ohio*, 438 U.S. 586 (1978), in overruling Petitioner's objection.  *Hitchcock VI*, 755 So. 2d at 642-43. However, the court concluded that the error was harmless beyond a reasonable doubt because, after considering the prosecutor's arguments in their totality, there was "no reasonable probability that those comments affected the verdict." *Id.* (citation omitted).

Petitioner argues that pursuant to *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Hitchcock v. Dugger*, 481 U.S. 393 (1987) (holding it is error to limit a defendant's presentation of mitigation to only statutory mitigating circumstances),  the prosecution's characterization of his valid mitigation evidence as a "mere ploy for sympathy," coupled with the defense argument that sympathy should play no role in the sentencing decision, effectively precluded the jury from considering Petitioner's mitigation evidence (Doc. No.

15 at 18).[6]   In *Eddings*, the Supreme Court held that a "sentencer [may not] refuse to consider, *as a matter of law*, any relevant mitigating evidence."  455 U.S. at 114.  The Court also stated that a sentencer is allowed to determine the weight to be given relevant mitigating evidence even though they may not exclude such evidence from consideration. *Id.* at 114-15.

Petitioner has overstated the import of *Eddings.  Eddings* does not require a sentencer to conclude that a particular fact is mitigating or to give it any particular weight.  *Puiatti v. McNeil*, 626 F.3d 1283, 1314 n. 28 (11th Cir. 2010) (citing *Schwab v. Crosby*, 451 F.3d 1308, 1329 (11th Cir. 2006)).  Additionally, *Eddings* does not require the sentencer to give weight to every mitigating factor asserted by the defendant or forbid the prosecutor from arguing that a mitigating factor deserves no weight on the evidence presented, which seems to be Petitioner's position.

Here, the prosecutor did not assert that the jurors *could not* consider the background evidence offered by Petitioner *as a matter of law*, nor did the trial court's instructions preclude consideration of any mitigating factor.   Rather, prior to making his objected-to statements, the prosecutor defined a mitigating fact as "the kind of fact that should have any weight in deciding whether somebody lives or dies for a crime like this." (Ex. Z-7 at 238).   The prosecutor did not urge or suggest that the jurors exclude Petitioner's

---

[6]This particular argument lacks credibility.  Defense counsel actually argued that sympathy *for the victim* should play no role in the jury's sentencing recommendation (Ex. Z-7 at 266-67).  Accordingly, defense counsel's statements regarding sympathy for the victim were not linked with the prosecution's argument that Petitioner's impoverished background did not amount to weighty mitigation.

background from its consideration; rather, the prosecution argued that such considerations should be assigned no weight. *Id.* The prosecutor told the jury to "look at everything" and subsequently argued why certain types of mitigation did not apply. *Id.* at 257. Read in context, the prosecutor's statements fall within the range of appropriate comment on the weight the jury should give the mitigation evidence in the weighing process. Because neither *Eddings* nor *Hitchcock* aid Petitioner on this claim, the state court's denial of this claim was not an unreasonable application of clearly established law.

Petitioner also argues that the prosecutor's arguments violated *Romano v. Oklahoma*, 512 U.S. 1 (1994). In *Romano*, the Court held that a state's capital sentencing scheme must "genuinely narrow the class of persons eligible for the death penalty" and "ensure that the capital sentencing decisions rest on [an] individualized inquiry under which the character and record of the individual offender and the circumstances of the particular offense are considered." *Id.* at 7 (quotations omitted). The prosecutor's comments did not result in an abandonment of Florida's narrow death sentencing scheme nor did it enable the jury to sentence Petitioner without considering his character and record or the particular circumstances of the offense. The prosecutor's arguments did not suggest that the jury could not consider mitigating evidence or Petitioner's background but instead suggested that these considerations were not weighty enough to outweigh the substantial aggravating factors present in the case.

Additionally, even if the statements at issue were made in error, any error was harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (stating on collateral review a

federal habeas court should perform a harmless error review of state court trial-type errors to determine whether a constitutional error at trial "had a substantial and injurious effect or influence in determining the jury's verdict.") (quotation omitted).  Upon review of the evidence, this Court agrees with the Supreme Court of Florida that, even if the prosecutor's argument crossed the line between urging the jury to give certain mitigating factors "no weight" and urging the jury to entirely exclude Petitioner's background from their consideration of the appropriate penalty, the error did not have a substantial and injurious effect on the jury's verdict.

Prior to making his allegedly misleading statement, the prosecutor told the jury that it could "look to any other aspect of the defendant's character, his record or any other circumstance of the offense before as mitigation [sic].  So it's a catch-all." (Ex. Z-7 at 257). After the prosecutor's statements regarding Petitioner's poverty and background, defense counsel argued that Petitioner's impoverished background should weigh heavily in mitigation (Ex. Z-7 at 275-76).  Numerous witnesses testified on behalf of Petitioner, most of whom testified regarding Petitioner's impoverished and difficult childhood and adolescence (Ex. Z-6).  Moreover, in its instructions to the jurors, the trial court told the jury that they *must* consider, among other things,  "any aspect of the Defendant's character or record and any other circumstance of the offense or the existence of any other factors in the Defendant's background that mitigate against the imposition of the death penalty" (Ex. Z-7 at 287); *see Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983) (a jury is presumed to follow jury instructions).  Finally,  the trial court determined in its sentencing order that

18

aspects of Petitioner's background such as his extreme poverty, lack of education, his father's lingering death, and his mother's epilepsy were established non-statutory mitigating factors entitled to "some weight." (Ex. Z-16 at 1116).

Given the strength of the case against Petitioner, the number of aggravating factors found by the trial court, the nature of the crime itself, and defense counsel's argument that Petitioner's background should weigh heavily in mitigation, Petitioner has not established that the trial court's failure to sustain his objection to the prosecution's improper comments had a substantial injurious effect on the jury's verdict.

## 2.    *Prosecutor's Closing Argument Regarding Petitioner's Mental Health Expert*

Petitioner next argues that the prosecutor's statements in closing argument unfairly diminished his mitigation in violation of the Eighth Amendment and denied him the right to confront evidence and witnesses against him (Doc. No. 15 at 15). Specifically, Petitioner points to portions of the closing argument in which the prosecutor argued, over defense counsel's objection:

> A fair assessment of Dr. Toomer's testimony is that he told you absolutely nothing. Think about his testimony. Was there one word, one phrase, one thought out of that entire hour and half that made any sense at all? It didn't make any sense at all. He literally babbled for an hour. He would be asked a question and he would answer it and it would take 15 minutes and at the end you would go, what did he say?

> It is the defense's burden to reasonably convince you of the existence of a mitigating circumstance. And it is the expert's burden or job to give it to you in a way you can understand, to make sense, to convince you that his opinion is right.

> Dr. Toomer got up there and basically, apparently, from the facts

19

believed, that he could just babble on and then give you an opinion and that you were supposed to accept it, that he didn't have to explain it to you in a way you can understand or make sense of it.

He wasn't cross-examined, ladies and gentlemen, because he didn't say one word or thought that was in any way relevant to this case or made any sense.

*Id.* at 15 (citing Ex. Z-7 at 249-51).  Petitioner raised this issue on direct appeal, and the Supreme Court of Florida determined that, "[a]lthough some parts of the argument approach the edge of proper argument, we do not find that the prosecutor's argument in this case was improper."  *Hitchcock VI*, 755 So. 2d at 643.[7]

 A federal court may grant habeas relief when improper comments on the part of the prosecutor rendered the entire trial fundamentally unfair.  *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974); *Hall v. Wainwright*, 733 F.2d 766, 773 (11th Cir. 1984).  In assessing whether the fundamental fairness of the trial has been compromised, the determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different.  *See Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1987); *Nelson v. Nagle*, 995 F.2d 1549, 1555 (11th Cir. 1993) (The relevant question is whether the prosecutor's closing argument "rendered the sentencing phase of the trial so fundamentally unfair as to deny him due process.").

While it may be possible that the prosecutor's comments regarding his reasons for

---

[7]The Supreme Court of Florida addressed this claim and the next claim simultaneously.  It is not clear from the order which of the prosecutor's remarks approached "the edge of proper argument."  However, it is clear that the court believed that none of the comments addressed in these claims crossed the line into impropriety.

foregoing cross examination of Dr. Toomer and his hyperbolic ridicule of the doctor "approached the edge of proper argument," they did not deprive Petitioner of a fair trial. The argument regarding Dr. Toomer "did not manipulate or misstate evidence, nor did it implicate other specific rights of the accused such as the right to remain silent." *Darden v. Wainwright*, 477 U.S. 168, 182 (1986). In Florida "wide latitude is permitted in arguing to a jury." *Breedlove v. State*, 413 So. 2d 1, 8 (Fla. 1982).

Defense counsel strenuously argued to the jury that Dr. Toomer had provided valuable testimony regarding Petitioner's borderline personality disorder, (Ex. Z-7 at 273-74), and the sentencing court instructed the jurors that they should rely upon the evidence presented during the course of the proceedings to make their sentencing recommendation. *Id.* at 283-84. In its sentencing order, the state court found that Petitioner suffered from "borderline personality disorders characterized by insecurity, instability, rejection, abandonment and lack of the ability to trust others" and that his life long personality difficulties influenced him at the time of the offense (Ex. Z-16 at 1115-16). Thus, the trial court gave effect to Dr. Toomer's testimony despite the prosecutor's comments. The Florida Supreme Court was therefore correct in concluding that the prosecutor's comments about Dr. Toomer were not improper.

### 3.   *Prosecutor's Factually Inaccurate Comments During Closing*

Petitioner next argues that the prosecutor's closing argument contained numerous

factually inaccurate comments (Doc. No. 15 at 16).[8]  Petitioner raised this claim on direct appeal, and the Supreme Court of Florida determined that none of the prosecutor's comments were improper.  *Hitchcock VI*, 755 So. 2d at 643.  The Court addresses each of the allegedly improper comments below.

### a. "Golden Rule" Arguments

Petitioner first alleges that the State made improper "Golden Rule" arguments.  The State explained to the jury that it must "do the most difficult job that a juror is called upon to do.  You must assess from the evidence what [the victim] went through in her last moments and hour of her life.  On what [sic] was in her mind and what was in her thoughts or what was possible in considering this circumstance."  (Ex. Z-7 at 244).  The prosecutor reminded the jury that the crime had happened twenty years prior, when "Donnie Osmond was still a star, when Michael Jackson had his original nose" and admonished the jury to "ask yourself how this girl in 1976 would react mentally to being raped."  *Id.* at 245.  The State also theorized that "[w]hen you strangle someone, they are conscious.  They know what's happening.  They can feel – they can feel the fact that they can't breathe, they know they can't breathe.  And anyone whose [sic] ever held their breath or lost their breath or had the wind knocked out of them can know how frightening it is not to be able to breathe.  It is absolutely terrifying."  *Id.* at 247.  When arguing that Petitioner's childhood poverty

---

[8]To the extent that they have already been addressed by this Court, Petitioner's claims that the jury was required by law to accept certain facts as mitigating or that the prosecutor mis-characterized Petitioner's mitigation evidence as a ploy for sympathy will not be further addressed. *See* discussion *supra* Ground One, part one.

was not a mitigating circumstance, the prosecutor argued that most people had an ancestor who grew up in poverty, but that such poverty had little to do with the crime. *Id.* at 258.

A "Golden Rule" argument "asks the jurors to place themselves in the victim's position, asks the jurors to imagine the victim's pain and terror or imagine how they would feel if the victim were a relative." *Hutchinson v. State*, 882 So. 2d 943, 954 (Fla. 2004). The prosecutor's comment that most of the jurors probably had an impoverished ancestor was not a golden rule argument because, at most, it asked the jurors to place themselves in Petitioner's position, not that of the victim. Likewise, the prosecutor's other comments did not impermissibly invite the jury to place themselves in the victim's shoes. Rather the prosecutor legitimately urged the jury to consider the victim's experience to determine whether the offense was especially heinous, atrocious, or cruel ("HAC") under Florida law.

The victim's fear, pain, and emotional strain before her death are all relevant to the heinous nature of a murder. *See Grossman v. McDonough*, 466 F.3d 1325, 1348 (11th Cir. 2006) (holding that describing the circumstances of death and the physical pain and emotional terror of victim is not a Golden Rule violation but is nonetheless plainly relevant to whether the murder was HAC). The Court finds that there was no Golden Rule violation in this case, and the prosecutor's statements were directly relevant to the HAC aggravator. As such, the prosecutor's comments did not deprive Petitioner of a fair trial.

> b.    *The Prosecutor's Use of Term "Rape" Instead of "Sexual Battery"*

Petitioner argues that the State blurred "the distinction between rape and sexual battery by using the emotionally charged term 'rape' repeatedly." (Doc. No. 15 at 17).

Petitioner does not elaborate on the alleged distinction between the terms.  Sexual battery of the type which occurred here was called "rape" under the Florida statutes until 1974.  *See M.C.N. v. State*, 511 So. 2d 1019 (Fla. 5th DCA 1987).[9]  The Florida court found that Petitioner's acts would constitute rape even though the jury was not instructed on rape but instead was instructed on sexual battery.  *Hitchcock III*, 413 So. 2d at 747.

The Court agrees with the state court's determination.  Petitioner has not cited, and this Court has not found, any Supreme Court precedent that has determined that the use of the term "rape" instead of "sexual battery" is inherently harmful or prejudicial.  Moreover, even if the prosecutor's comments that Petitioner committed a rape were erroneous, the error was harmless.  The jury was instructed that it could consider whether Petitioner committed a sexual battery (Ex. Z-7 at 286).

Additionally, Petitioner's conduct could be proven under either the rape or sexual battery statute, even though each has slightly different definitions.  Prior to the change in the statute, rape was defined as when a person "ravishes or carnally knows a person of the age eleven years or more by force and against his or her will."  § 794.01(2), Fla. Stat. (1973).  Sexual battery was defined at the time of Petitioner's trial as "oral, anal, or vaginal penetration by, or union with, the sexual organ of another or the anal or vaginal penetration of another by any other object; however, sexual battery does not include an act done for a bona fide medical purpose."  § 794.011(1)(h), Fla. Stat. (1976).  The statute also

---

[9]Ch. 74-121, Laws of Florida, amended chapter 794, Florida Statutes, in 1974 to replace the former rape statue with the crime of sexual battery.  *See* § 794.011,  Fla. Stat.

notes that the sexual penetration or union with the sexual organ of a person twelve years of age or older must be without consent.  § 794.011(3), Fla. Stat.

Whether labeled as sexual battery or rape, the evidence was sufficient to find that Petitioner committed either crime, as the Court discusses *infra* in Ground Two, Part 3.  Not only did Petitioner admit to having sexual intercourse with the victim, but circumstantial evidence supports a finding that the intercourse was without consent.   Specifically, the jury could infer from Petitioner's statement to police that because he surreptitiously entered his brother's home through a window in the early morning hours, he wished that no one would be aware of his presence.  Further, the victim, a 73 pound thirteen-year-old, repeatedly told Petitioner he had hurt her and insisted she would tell her mother.  Finally, although the victim failed to physically resist, Florida law provides that this failure cannot be construed to mean that a victim consented to the sexual intercourse. § 794.011(1)(a), Fla. Stat. (1976) (consent shall not be construed from coerced submission).  Because Petitioner's actions constituted rape or sexual battery, the prosecutor's statements to the jury did not have a substantial or injurious effect on the outcome of the penalty phase.

c.   *Inaccurate Factual Statements*

Petitioner argues that the prosecutor: (1) mis-characterized the medical examiner's testimony used to establish a sexual assault upon the victim; (2) falsely stated that Petitioner choked the victim in her bedroom until she stopped screaming, whereas Petitioner actually "grabbed her by the neck and made her quit hollerin' and [then] picked her up and . . . carried her outside" with his hand over his mouth where he then strangled

25

her; (3) incorrectly insinuated that Petitioner and his family were migrant workers when, in fact, they were not; and (4) did not allow Petitioner the opportunity to refute the prosecutor's mis-characterization of the morals of the 1970's with evidence of "Watergate, Studio 54, the mainstream success of pornographic movies, and the 1977 emergence of the Sex Pistols." (Doc. No. 15 at 17-18; Doc. No. 26 at 10).

Petitioner's arguments are without merit. With regard to Petitioner's first claim, the Court finds the prosecutor did not mis-characterize the medical examiner's testimony. Rather the prosecutor reasonably implied that Petitioner's own confession, combined with "the medical evidence from Dr. Gore [that] there was evidence of recent hymenal tears," proved a sexual assault on the victim within hours of her actual death (Ex. Z-7 at 242). *United States v. Morris*, 568 F.2d 396, 401 (5th Cir. 1978) (noting in closing argument, counsel may state his or her contention as to the conclusion which the jury should draw from the evidence); *Tucker v. Kemp*, 762 F.2d 1496, 1507 (11th Cir. 1985) (Prosecutor's allegation in closing argument of sentencing phase that victim was raped before she was killed was not improper as rape could reasonably be inferred from evidence before the jury).

The other alleged misstatements were largely irrelevant or of no significant import. They clearly do not rise to the level of a due process violation, and require no further explanation.

### 4.    *Cumulative Error*

Finally, there was no cumulative error in the instant case. Although the cumulative effect of several errors that are harmless by themselves could result in prejudice, *United*

*States v. Preciado-Cordoba*, 981 F.2d 1206, 1215 n. 8 (11th Cir. 1993), in addressing a claim of cumulative error, the trial as a whole must be examined to determine whether Petitioner's trial was fundamentally unfair. *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004). The Court has considered the cumulative effect of Petitioner's claims of prosecutorial misconduct and finds that he cannot demonstrate cumulative error sufficient to entitle him to federal habeas relief.

### B.  Ground Two

#### 1.       Avoid Arrest Aggravator

Petitioner claims that the trial court violated his Eight Amendment rights by instructing the jury on, and allowing the State to argue facts related to, the aggravating circumstance that he committed the murder to avoid or prevent arrest (Doc. No. 15 at 23). Petitioner raised this claim on direct appeal from his fourth penalty phase proceeding. The Supreme Court of Florida determined that the instant claim was procedurally barred because the court had previously decided this claim adversely to Petitioner. *Hitchcock VI*, 755 So. 2d at 644.  The court further noted that on appeal from Petitioner's second penalty phase it had rejected this claim.  *Id.* (citing *Hitchcock III*, 578 So. 2d at 692-93).  Petitioner argues that the claim is not procedurally barred because, although the Supreme Court of Florida had previously denied him relief on this claim, it was in relation to an earlier penalty phase (Doc. No. 16 at 23).  Petitioner contends that after his fourth penalty phase he was again entitled to raise this claim and have it decided on the merits.  *Id.*

This Court will not consider a claim if it was presented to the state court and rejected

on independent and adequate state grounds of procedural bar or default. *Coleman*, 501 U.S. at 734-35; *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001). However, the state court's procedural ruling was not based on an adequate and independent ground. *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (internal quotes and citations omitted). The Supreme Court of Florida has held that a resentencing proceeding is a new or de novo proceeding and is viewed as a "clean slate." *Galindez v. State*, 955 So. 2d 517, 525 (Fla. 2007); *Merck v. State*, 975 So. 2d 1054, 1061 n.4 (Fla. 2007). Because Petitioner was resentenced, the Supreme Court of Florida's finding that the instant claim was barred because it had previously been raised and rejected in a prior appeal was improper. *See Merck*, 975 So. 2d at 1061 n.4 (finding the trial court's determination that the petitioner's claim was barred by the law of the case doctrine because it had been raised and rejected in a prior sentencing proceeding was erroneous because the court is not bound by prior legal determinations in a new sentencing proceeding). Petitioner was entitled to relitigate whether the aggravating circumstances in his case were properly found. Therefore, the Court will address the merits of this claim.

Where a state court does not adjudicate a claim on the merits because it finds that a claim was procedurally barred, a federal court is not subject to the deferential standard that applies pursuant to section 2254(d) and instead the claim is reviewed *de novo*. *See Conner v. Hall*, 645 F.3d 1277, 1292 (11th Cir. 2011); *Ferrell v. Hall*, 640 F.3d 1199, 1224 (11th Cir. 2011) (citing *Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009)). Turning to the merits of Petitioner's claim, the Court finds he has not demonstrated that he is entitled to relief.

28

The trial court instructed the jury that it could consider whether "the crime for which the defendant is to be sentenced was committed for the purpose of avoiding lawful arrest or to effect escape from custody" (Ex. Z-7 at 286). Although Petitioner argues that the trial court did not fully instruct the jury on what the State was required to prove, Petitioner fails to allege what additional instructions should have been given. This instruction is identical to the standard jury instruction given in Florida. Fla. Std. Jury Instr. (Crim) § 7.11. Thus, to the extent that Petitioner argues that the trial court did not properly instruct the jury on this aggravating circumstance, his claim fails.

In finding the existence of this aggravator, the trial court stated the following:

> It is absolutely clear from the Defendant's statement as well as the testimony of the victim's sister and the medical examiner, Dr. Ruiz, that the murder was committed in order to "silence" her from reporting his sexual abuse of her and the consequences that would follow. I used the word "silence" because it sums up best why the Defendant was beating and "chokin'" [sic] her to stop her "screamin'" and "hollerin'" [sic]. The "chokin'" and "chokin'" [sic] did, indeed, silence the victim from ever reporting his unlawful attacks to her mother. Additionally, pushing her into the bushes, going back into the house, showering, and washing his shirt conclusively demonstrates that the murder was definitely committed for the purpose of avoiding or preventing lawful arrest. Thus, this aggravating factor has been proven beyond a reasonable doubt and will be given great weight.

(Ex. Z-16 at 1114) (footnote omitted).

To determine "whether a state court's application of its constitutionally adequate aggravating circumstances was so erroneous as to raise an independent due process or Eighth Amendment violation, we think the more appropriate standard of review is the 'rational factfinder' standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979)." *Lewis*

*v. Jeffers*, 497 U.S. 764, 781 (1990).  The Supreme Court of the United States has held that when reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 918 (11th Cir. 2009).

The Court concludes that a rational factfinder could have found the existence of the aggravating circumstance in this case.  This aggravator "focuses on the motivation for the crimes." *Jennings v. State*, 718 So. 2d 144, 151 (Fla. 1998).  "'[T]he mere fact of a death is not enough to invoke this factor . . . .  Proof of the requisite intent to avoid arrest and detection must be very strong.'" *Consalvo v. State*, 697 So. 2d 805, 819 (Fla. 1996) (quoting *Riley v. State*, 366 So. 2d 19, 22 (Fla. 1978)).  The evidence "must prove that the sole or dominant motive for the killing was to eliminate a witness." *Id.*  (citations omitted).  "Mere speculation on the part of the state that witness elimination was the dominant motive behind a murder cannot support the avoid arrest aggravator." *Id.*  Moreover, the fact that a victim knew and could identify the perpetrator, without more, is insufficient to prove the avoid arrest aggravator. *Jennings*, 718 So. 2d at 151.  However, the avoid arrest aggravator may be proved by circumstantial evidence.  *Id.* (citing *Swafford v. State*, 533 So. 2d 270, 276 (Fla. 1988)).  A court may consider such things as whether the defendant used gloves or a mask, whether the victim resisted, or whether the victim was in a position to pose a threat to the defendant.  *Serrano v. State*, 64 So. 3d 93, 114 (Fla. 2011); *Parker v. State*, 873 So. 2d 270,

289 (Fla. 2004).

Petitioner was personally known by the victim because he was her step-father's brother and lived in their house. Additionally, in Petitioner's statement to police, he indicates that he was concerned that the victim was going to tell her mother about the sexual activity that had occurred (Ex. A-6 at 691). Petitioner told police that the victim threatened to tell her mother because she was hurt, and Petitioner responded that she could not tell anyone. *Id.* Nevertheless, the victim insisted she was going to tell and began to yell. *Id.* This evidence directly supports a finding of the avoid arrest aggravator. *See Walls v. State*, 641 So. 2d 381, 390 (Fla. 1994) (stating that the defendant's argument that the avoid arrest aggravator was improperly found was without merit "because it is directly refuted by the record and Walls' own words").

Moreover, Petitioner told police that after the victim began to yell, he removed her from the home (Ex. A-6 at 691). The act of removing the victim from her home and bringing her outside so that no one could hear her shouts also lends support to the finding of the avoid arrest aggravator. *See Hoskins v. State*, 965 So. 2d 1, 19-20 (Fla. 2007) ("we have repeatedly upheld the finding of [the avoid arrest] aggravator where a sexual battery or robbery occurred in one location and the victim was taken to and killed in another one.") (citations omitted); *Nelson v. State*, 850 So. 2d 514, 526 (Fla. 2003) (noting that the defendant's actions of driving the victim to a remote area to kill her supported a finding of the avoid arrest aggravator). Based on the evidence, there was no reason to kill the victim except to eliminate her as witness. The Court concludes that the evidence was

31

sufficient to support a finding of this aggravating circumstance.

### 2.    *Ex Post Facto Violations*

Petitioner claims that the trial court erred by denying his *ex post facto* challenges (Doc. No. 15 at 24).  In support of this claim, Petitioner maintains that the trial court's finding of two aggravators, namely, the murder was committed while he was under a sentence of imprisonment and during the commission of a felony, was improper because the application of these aggravators violates the Ex Post Facto Clause of the United States Constitution.  *Id.*

Petitioner raised these claims on direct appeal from his fourth penalty phase.  The Supreme Court of Florida found that the claims were procedurally barred because they had been raised and rejected in prior appeals.  *Hitchcock VI*, 755 So. 2d at 644.  However, similar to Ground Two, Part One, the Court finds that Petitioner is entitled to a determination of the merits of these claims.  The state court's reliance on procedural default was improper because Petitioner was entitled to reassert these claims upon resentencing.  *Galindez*, 955 So. 2d at 525; *Merck*, 975 So. 2d at 1061 n.4.

### a.    *Under a Sentence of Imprisonment Aggravator*

Petitioner asserts that in his 1977 penalty phase, the trial court did not consider or find the existence of the "under a sentence of imprisonment" aggravator.  After Petitioner was sentenced, the Supreme Court of Florida issued *Aldridge v. State*, 351 So. 2d 942 (Fla. 1977), in which the court recognized parole as the equivalent of being under a sentence of imprisonment.  Petitioner contends that applying this aggravating circumstance in his new

32

penalty phase proceeding amounts to an *ex post facto* violation. Petitioner raised this claim on appeal from his second penalty phase, and the Supreme Court of Florida found that the application of this aggravator did not violate the Ex Post Facto Clause because "[r]esentencing proceedings, however, are completely new proceedings. These ex post facto and double jeopardy claims are of no merit because the resentencing occurred after we released *Aldridge." Hitchcock III*, 578 So. 2d at 693 (internal and external citations omitted).

The United States Constitution's Ex Post Facto Clause prohibits a state from passing ex post facto laws. U.S. Const. art. I, § 10, cl. 1; *see also Collins v. Youngblood*, 497 U.S. 37, 41-43 (1990) (a law that aggravates a crime or increases the punishment for a criminal act, after it was committed, violates the Ex Post Facto Clause); *Weaver v. Graham*, 450 U.S. 24, 30 (1981) (the Ex Post Facto Clause prohibits the "imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred."). The Ex Post Facto Clause "does not apply to judicial decisionmaking" unless "a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers v. Tennessee*, 532 U.S. 451, 462 (2001) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)). "'[R]outine exercise of common law decisionmaking in which the court brought the law into conformity with reason and common sense' rather than 'a marked and unpredictable departure from prior precedent'" does not "contravene the fair-warning

33

principle of the Due Process Clause." *Magwood v. Warden, Ala. Dep't of Corr.*, 664 F. 3d 1340, 1347 (11th Cir. 2011) (quoting *Rogers*, 532 U.S. at 467)).   The Eleventh Circuit Court of Appeals has further held that capital defendants can raise a *Bouie* fair-warning challenge "to a judicial interpretation of a statute that increases his punishment from life to death." *Id.* at 1348.

Prior to *Aldridge* there is no explicit indication from the Florida courts regarding whether serving parole amounted to a sentence of imprisonment pursuant to section 921.141(5).   However, the decision in *Aldridge* was a routine exercise of judicial decisionmaking which construed the Florida statute as reason and common sense would dictate.   It was foreseeable that "under a sentence of imprisonment" would include a term of parole, as parole was considered part and parcel of a sentence at the time Petitioner's crime was committed.   *See Marsh v. Garwood*, 65 So. 2d 15, 19 (Fla. 1953) ("The term 'parole' means the procedure by which a prisoner, that is to say, a duly convicted defendant who has been sentenced and is serving a term of imprisonment under the judgment of conviction, 'is allowed to serve the last portion of his sentence outside prison walls and under strict supervision, as preparation for his eventual return to society.'") (quoting *Sellers v. Bridges*, 153 Fla. 586 (1943) (emphasis omitted)).   The Florida statute allowing for consideration of the aggravating factor that the murder was committed while under a sentence of imprisonment was in effect at the time the offense at issue was committed.   *See* § 921.141(5)(a), Fla. Stat. (1976).   Thus, Petitioner had fair warning that this aggravator could be considered during sentencing.   As such, the Court concludes that the application

of the under a sentence of imprisonment aggravating circumstance did not violate the Ex Post Facto Clause.

b.      *Felony Murder Aggravator*

Petitioner next argues the trial court's finding of the aggravating circumstance that the murder occurred during the commission of a sexual battery is an *ex post facto* violation because in 1976, the statute lists only rape in defining this aggravator (Doc. No. 15 at 25). Petitioner maintains that it was not until 1983 that the Florida Legislature amended section 921 to substitute sexual battery for the crime of rape in the definition of this aggravator. *Id.* Petitioner asserts that in his fourth penalty phase, the trial court improperly considered the aggravating circumstance as amended in 1983 instead of considering the 1976 version of the statute. *Id.*

In 1974, the Florida Legislature replaced the former rape statute with the crime of sexual battery. However, it was not until 1983 that the Legislature amended the death penalty statute to coincide with this change. Thus, when this crime was committed in 1976, the aggravator was rape, but the crime was sexual battery.

The Florida court found that Petitioner's acts would constitute rape even though the jury was instructed on the definition of sexual battery. *Hitchcock III*, 413 So. 2d at 747. As discussed *supra*, this Court agrees with the state court's determination. Petitioner's conduct could be found under either the rape or sexual battery statute, although each has slightly different definitions. Furthermore, Petitioner had fair warning or notice that this aggravating circumstance could be found. It is Petitioner's act itself, and not the name it

35

is given, that constitutes the aggravating circumstance.  Whether labeled rape or sexual battery, Petitioner's act was already defined as an aggravating circumstance at the time he committed the murder.  This is not a situation where the State passed a statute that imposed a more severe punishment, nor did the Florida courts construe the statute to include more severe conduct.  Thus, no *ex post facto* violation has occurred here.

### 3.   *Sufficient Evidence of Felony Murder Aggravator*

Petitioner claims that the State failed to prove that the murder was committed during the commission of a sexual battery or rape (Doc. No. 15 at 26).  In support of this claim, Petitioner argues that the evidence presented did not prove force or a lack of consent on the part of the victim.  *Id.* at 27.  Petitioner raised this claim on direct appeal from his fourth penalty phase, and the Supreme Court of Florida found the claim was procedurally barred.  *Hitchcock VI*, 755 So. 2d at 644.  However, Petitioner is entitled to a determination of the merits of this claim because it was not procedurally defaulted in the state court. *Galindez*, 955 So. 2d at 525; *Merck*, 975 So. 2d at 1061 n.4.  After a new penalty phase, Petitioner was entitled to challenge the sufficiency of the evidence supporting the aggravating circumstances in this case.

Turning to the merits of Petitioner's claim, the trial court instructed the jury that they could consider whether the murder was "committed while [Petitioner] was engaged in the commission of the crime of sexual battery" (Ex. Z-7 at 286).  Following the jury's recommendation and the *Spencer* hearing, the trial court made the following findings with respect to this aggravating circumstance:

There is no evidence to support any contention that the Defendant's sexual intercourse with Cynthia Driggers was consensual. Instead, the testimony of the medical examiner concerning the fresh tear of her hymen establishes that she was a virgin prior to sexual activity before her death. The testimony of her sister, Deborah, establishes that she was distressed over the Defendant's abuse of her to the point of wanting to tell her mother, but not doing so out of fear. Finally, the statement made by the Defendant following his arrest is anything but consistent with a claim of consent

. . . .

Indeed, under the circumstances presented, this Court finds the contention of consent to be completely unreasonable. Thus, this aggravating factor has been proven beyond a reasonable doubt, and I find it to warrant great weight.

(Ex. Z-16 at 1113) (footnote omitted). Petitioner challenged the sufficiency of this evidence on direct appeal from his first penalty phase. The Supreme Court of Florida rejected the claim, finding that this aggravating circumstance was amply supported by the record. *Hitchcock I*, 413 So. 2d at 747. This Court agrees. Applying the *Jackson* standard, and giving due deference to the state courts' unrebutted findings of fact, the Court determines that a rational factfinder could have found that the murder was committed during the course of a sexual battery.[10]

Dr. Ruiz, the former medical examiner for Orange County, Florida, testified that the victim had a tear in her hymen that was five centimeters in length (Ex. Z-6 at 38). He opined that the victim was a virgin at the time of the sexual activity. *Id.* Moreover, Dr.

---

[10]Florida courts have found that the State does not need to charge and convict a defendant of felony murder or any underlying felony in order for the trial court to find an aggravating factor of murder committed during the course of a felony. *Overton v. State*, 976 So. 2d 536, 559 (Fla. 2007) (citing *Occhicone v. State*, 570 So. 2d 902, 906 (Fla. 1990)).

Ruiz stated that the injury to the victim's hymen took place at most three hours before death but could have occurred only 30 minutes before her death. *Id.* at 40. Finally, Dr. Ruiz noted that the victim was 73 pounds at the time of her death. *Id.* at 41. Deborah Driggers ("Driggers"), the victim's sister, testified that the victim told her Petitioner was doing inappropriate things of a sexual nature to her. *Id.* at 55. Driggers also testified that when she and the victim confronted Petitioner, he threatened to rape and kill both of them if they told an adult. *Id.* The victim begged Driggers not to tell their mother. *Id.* at 56. Driggers did not tell anyone because she was scared of Petitioner. *Id.* at 57. The victim was found dead the day after Petitioner made these threats. *Id.*

Detective Dan Nazarchuk of the Orange County Sheriff's Office testified at Petitioner's trial that Petitioner gave a voluntary statement after being read his *Miranda* rights (Ex. A-6 at 681-83). Petitioner's taped statement was played for the jury. In that statement Petitioner stated that he arrived home at 2:30 a.m., entered the home through a window, and went to the victim's room, where they had sexual intercourse. *Id.* at 691. Petitioner stated that the victim said that she was "hurting" and was going to tell her mother. *Id.* Petitioner told the victim that she could not tell her mother what had happened, and the victim insisted that she was going to tell and began to yell. *Id.* Petitioner stated that he grabbed the victim by the neck and tried to stop her from yelling, he then carried the victim outside and asked her not to tell her mother. *Id.* The victim stated that she was going to tell her mother because she was hurt and began to scream. *Id.* Petitioner then told police that he got "real tough" and began to choke her and hit her, after

which she died.  *Id.* at 692.

Petitioner admittedly had sexual intercourse with the victim.  Furthermore, circumstantial evidence supports a finding that the sexual intercourse was without consent. *See Caylor v. State*, 78 So. 3d 482, 494 (Fla. 2011) (finding that there was sufficient evidence establishing that the victim did not consent to the sexual intercourse where the victim was thirteen years old, barely knew the thirty-three year old defendant, was shy, and would not speak with unfamiliar people unless her older brother was with her).  Although Petitioner did not admit that the sexual intercourse was without consent, one could reasonably infer that from the circumstances.

The evidence presented also supports a finding that the murder was committed *during the commission of* a sexual battery, even though the sexual battery occurred thirty minutes to three hours before the victim's death.  Florida courts have upheld a finding of this aggravating circumstance when a sexual battery was perpetrated three hours prior to a homicide.  *See Bogle v. State*, 655 So. 2d 1103, 1108 (Fla. 1995) (holding that the felony murder aggravating circumstance based on sexual battery was proven where the victim was found nude, the DNA from the victim's vagina was consistent with the defendant's DNA, and the medical examiner testified that sexual activity occurred within three hours of the victim's death).  Accordingly, this claim is without merit.

### 4.    HAC Aggravator

Petitioner contends that the trial court erred by finding the HAC aggravating circumstance (Doc. No. 15 at 28).  Petitioner also asserts that the jury instruction given on

this aggravator was unconstitutional.  *Id.*  The trial court instructed the jury on the HAC

aggravator as follows:

> Four, the crime for which the defendant is sentenced was especially heinous, atrocious and cruel.  Heinous means extremely wicked or shockingly evil.  Atrocious means outrageously wicked and vial.  Cruel means designed to inflict high degree of pain with utter indifference to or even the enjoyment of suffering of others.
>
> The kind of crime intended to be included in heinous, atrocious and cruel is one that is accompanied by additional acts that show that the crime was consciousless or pitiless and was unnecessarily torturous to the victim.

(Ex. Z-7 at 286).  The trial court said the following with respect to the HAC aggravator:

> This Court has great difficulty in expressing the horror, suffering and physical and emotional trauma the child victim must have experienced in this case.  The Defendant's statement demonstrates best what she endured in the course of his painful sexual assault, removal from her home, beatings and chokings in order to secure her eventual silence.  The Court cannot find words to say what she must have gone through.  This child's murder fits every imaginable definition of these terms that have evolved though the crime occurred over 20 years ago.  It was heinous.  It was cruel.  It was atrocious.  Thus, this aggravating factor has been proven beyond a reasonable doubt and will be given considerable weight.

(Ex. Z-16 at 1114) (footnote omitted).  Petitioner raised this claim on appeal, and the

Supreme Court of Florida found the claim was procedurally barred.  *Hitchcock VI*, 755 So.

2d at 644.  However, similar to the previous claims, the Court finds that Petitioner is

entitled to again challenge the sufficiency of the evidence supporting this aggravating

circumstance.

The trial court gave the standard jury instruction on the HAC aggravator.  Fla. Std.

Jury Inst. (Crim.) § 7.11.  The Supreme Court of Florida has upheld the standard penalty

phase instruction on the HAC aggravator.  *See Smithers v. State*, 18 So. 3d 460, 472 (Fla.

2009) (citation omitted).    Although the Supreme Court invalidated Florida's HAC instruction in *Espinosa v. Florida*, 505 U.S. 1079 (1992), the HAC instruction in this case is identical to the jury instruction that was upheld in *Hall v. State*, 614 So. 2d 473, 478 (Fla. 1993).  The *Hall* instruction, like the instruction in this case, specifically defined the terms "heinous," "atrocious," and "cruel," and therefore provided sufficient guidance so as to save the instruction from constitutional challenge.  *See Hall*, 614 So. 2d at 478.

Additionally, this Court concludes that the trial court did not err by finding the existence of the HAC aggravator.  Florida courts have held that the HAC aggravator "pertains more to the victim's perception of the circumstances than to the perpetrator's." *Hitchcock III*, 578 So. 2d at 692, *vacated on other grounds by* 505 U.S. 1215 (1992).  "Fear and emotional strain can contribute to the heinousness of a killing." *Id.* at 693 (citing *Adams v. State*, 412 So. 2d 850 (Fla. 1982)).  Florida courts have consistently upheld findings of the HAC aggravator in cases where a conscious victim was beaten or strangled.  *See Zommer v. State*, 31 So. 3d 733, 747 (Fla. 2010); *Conde v. State*, 860 So. 2d 930, 955 (Fla. 2003) (It is permissible to "infer that strangulation perpetrated upon a conscious victim involves foreknowledge of death, causes extreme anxiety and fear, and is a method of killing to which heinousness is applicable."); *Orme v. State*, 25 So. 3d 536 (Fla. 2009) (stating "because strangulation of a conscious victim involves foreknowledge and the extreme anxiety of impending death, death by strangulation constitutes prima facie evidence of HAC").

Dr. Ruiz testified that the victim's cause of death was asphyxiation due to manual strangulation (Ex. Z-6 at 38).  Dr. Ruiz also testified that the victim had lacerations on her

face likely caused by a blow with a fist and contusions below or surrounding her eyes. *Id.* at 33-34, 37. Although Dr. Ruiz opined that the victim was likely at some point rendered unconscious before she died, he also noted that the lung capacity of a person who is struggling generally is accelerated due to their survival reflex. *Id.* at 44-45. When further questioned, Dr. Ruiz testified that a person would not immediately fall unconscious when strangled. *Id.* at 49.

Dr. Ruiz's testimony, coupled with Petitioner's statement that he began to choke the victim after she began yelling, stopped when the victim became silent, and then commenced strangling the victim when she yelled again indicates that the victim was conscious during part of the strangulation. Similar to *Zommer*, *Conde*, and *Orme*, the trial court's finding of this aggravator is supported by the evidence. Petitioner has not demonstrated that the trial court erred by finding this aggravating circumstance.

### 5.   *Improper Doubling*

Petitioner claims that the trial court erred when it refused to instruct the jury regarding improper doubling of aggravating circumstances (Doc. No. 15 at 29). Petitioner maintains that the felony murder, avoid arrest, and under a sentence of imprisonment aggravators were improperly doubled *Id.* Petitioner raised these claims on direct appeal from his fourth penalty phase. The Supreme Court of Florida rejected these claims, stating the trial court did not err in refusing to give a doubling instruction because Petitioner did not inform the trial court which aggravators would constitute improper doubling. *Hitchcock VI*, 755 So. 2d at 644. Additionally, the court held that no doubling of the aggravators

42

occurred in this case.  *Id.* at 644-45.

"Improper doubling occurs when both aggravators rely on the same essential feature or aspect of the crime.  However, there is no reason why the facts in a given case may not support multiple aggravating factors so long as they are separate and distinct aggravators and not merely restatements of each other . . ."  *Banks v. State*, 700 So. 2d 363, 367 (Fla. 1997) (citing *Provence v. State*, 337 So. 2d 783, 786 (Fla. 1976)).  After a review of the record, the Court agrees that there was no improper doubling of aggravating circumstances (Ex. Z-7); Fla. Std. Jury Instr. (Crim) 7.11.

The record reflects that the avoid arrest aggravator was found based on evidence that Petitioner removed the victim from the home when she began yelling and stating that she was going to tell her mother about the sexual activity and then murdered her.  The aggravating circumstance that the murder was committed during the commission of a sexual battery was premised on (1) Petitioner admitting to having sexual intercourse with the victim, (2) the victim stating that Petitioner had hurt her during the sexual intercourse, and (3) the victim being unable to physically resist Petitioner.  Finally, the under a sentence of imprisonment aggravator was solely premised on the fact that Petitioner was on parole when the murder was committed.

Although the evidence supporting these aggravators may be somewhat interrelated, there is no indication that these aggravators are duplicative.  Moreover, Petitioner has not cited to any Supreme Court precedent that is contrary to the state court's determination that the use of these aggravators was not erroneous.  This claim is therefore, without merit.

43

### 6.     *Trial Court Findings as to Aggravators and Mitigators*

Petitioner challenges the trial court's findings regarding the aggravating and mitigating circumstances (Doc. No. 15 at 30).  Petitioner  argues that the findings with regard to the statutory aggravators and mitigator are "paltry" and the findings with respect to the nonstatutory mitigating are nonexistent. *Id.*  Petitioner also contends that the trial court did not properly consider and weigh each statutory and non-statutory circumstance. *Id.*  Petitioner raised this claim on direct appeal from the 1996 penalty phase. The Supreme Court of Florida rejected it, finding that the trial court complied with the directions for sentencing orders. *Hitchcock VI*, 755 So. 2d at 645 (citing *Ferrell v. State*, 653 So. 2d 367 (Fla. 1995); *Campbell v. State*, 571 So. 2d 415 (Fla. 1990)).

This claim does not implicate federal constitutional law and therefore, is not subject to federal habeas review.  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no question of a constitutional nature is involved. *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *see also Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (holding that "[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them"). The Eleventh Circuit has held that federal courts cannot review a "state's alleged failure to adhere to its own sentencing procedures." *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (citations omitted).  Accordingly, Petitioner's claim does not warrant federal habeas relief.

Moreover, Petitioner has not demonstrated that he is entitled to relief on this claim. The Supreme Court of Florida has held that in a death penalty case, the trial judge must "expressly evaluate in his . . . sentencing order each statutory and non-statutory mitigating circumstance proposed by the defendant." *Ferrell*, 653 So. 2d at 371. The trial court's evaluation must include a determination of whether the mitigators are supported by the evidence, and the court must weigh the mitigators against any aggravating circumstances. *Id.* The results of this weighing must be detailed in a written sentencing order and supported by evidence in the record. *Id.*

Here, the trial court discussed each aggravating and mitigating circumstance and found, after weighing the evidence, that the aggravators outweighed any mitigating circumstances (Ex. Z-16 at 1111-18). Furthermore, contrary to Petitioner's contentions, the trial court assigned individual weights to each of the relevant aggravators and mitigators. *See Fennie v. State*, 855 So. 2d 597 (Fla. 2003). The trial court specifically stated that it "carefully considered and discussed the aggravating and mitigating circumstances raised" and found that while the "statutory and non-statutory mitigating circumstances [were] to the Defendant's credit, [they were] not of such significance as to outweigh or even weigh heavily against the aggravators" (Ex. Z-16 at 1118). The Eleventh Circuit has upheld a similar sentencing order. *See Mills v. Singletary*, 161 F.3d 1273, 1283-84 (11th Cir. 1998) (finding no clear error where the trial court's sentencing order concluded "[i]t is the finding of this Court after weighing the aggravating and mitigating circumstance that there are sufficient aggravating circumstances as specified in 921.141 and insufficient mitigating

circumstances therein that a sentence of death is justified.").  Accordingly, this claim fails.

### C.      Ground Three

#### 1.      Proportionality

Petitioner claims that his death sentence is disproportionate (Doc. No. 15 at 32).  The Supreme Court of the United States has held that proportionality review is not required by the United States Constitution.  *See Pulley v. Harris*, 465 U.S. 37, 43-44 (1984).  In addition, where state law requires proportionality review, the Eleventh Circuit has held that:

> A federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's finding of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in the similar cases.  To do so would thrust the federal judiciary into the substantive policy making area of the state.

*Moore v. Balkcom*, 716 F.2d 1511, 1518 (11th Cir. 1983) (citing *California v. Ramos*, 463 U.S. 992, 996-1000 (1983)); *see also Mills v. Singletary*, 161 F.3d 1273, 1281-82 (11th Cir. 1998).

Moreover, the Eleventh Circuit has rejected the argument that federal law requires those state courts which are required to undertake such review, to "make an explicit detailed account of their comparisons."  *Lindsey v. Smith*, 820 F.2d 1137, 1154 (11th Cir. 1987).  In doing so, the Eleventh Circuit explicitly stated:

> [W]e refuse to mandate as a matter of federal constitutional law that where, as here, state law requires such review, courts must make an explicit, detailed account of their comparisons.  Based on their own past experience in reviewing capital punishment cases, state appellate courts "can rationally distinguish between those individuals for whom the death penalty is an appropriate

> sanction and those for whom it is not," *Spaziano v. Florida*, 468
> U.S. 447 (1984), without listing in their opinions the facts that
> did not justify the imposition of the death penalty in prior cases.

*Id.*

To the extent Petitioner challenges the Florida court's proportionality review and requests the Court to conduct a de novo proportionality review of his sentence, he is not entitled to such relief. The Supreme Court of Florida conducted a proportionality review as required by Florida law and determined that no re-sentencing was warranted. *Hitchcock VI*, 755 So. 2d at 645. There is no evidence that this was done arbitrarily or capriciously. The review provided an adequate safeguard of Petitioner's constitutional rights. Petitioner is not entitled to relief on this claim.

### 2.     *Impermissible Penalty Phase Testimony*

Petitioner contends that the trial court erred when it permitted testimony from former attorney Greene regarding his representation of Petitioner during clemency proceedings (Doc. No. 15 at 33). In support of this claim, Petitioner alleges that Greene was called for the limited of purpose of showing the jury some of the profound changes that Petitioner has made over the years. *Id.* Petitioner argues, however, that allowing the jury to find out that Petitioner had previously appeared before the Governor and the Clemency Board in order to have his death sentence commuted was error because the jury considered evidence that was not defined as an aggravating or mitigating circumstance. *Id.* Petitioner raised this claim on direct appeal, and the Supreme Court of Florida found the claim was not meritorious, noting that the complained-of comment was made by Petitioner's own

witness. *Hitchcock VI*, 755 So. 2d at 645.  The court further found that "although a vacated

death sentence should not play a significant role in resentencing, 'mention of a prior

sentence does not mandate reversal.'" *Id.*  (citing *Hitchcock III*, 578 So. 2d at 692).

During the 1996 penalty phase, Greene testified on cross examination that he

represented Petitioner during clemency proceedings (Ex. Z-6 at 80).  Trial counsel objected

to this line of questioning, and the trial court overruled the objection.  *Id.*  Greene further

testified that the purpose of clemency proceedings is to ask the Governor to reduce a death

sentence to a life sentence.  *Id.*  The Supreme Court has found that the admission of a

petitioner's prior death sentence at a new penalty phase was not fundamentally unfair

where the jury was clearly and properly instructed on their role in determining the

petitioner's sentence.  *Romano*, 512 U.S. at 13  ("[I]f the jurors followed the trial court's

instructions, which we presume they did, this evidence should have had little-if any-effect

on their deliberations . . . . [The] instructions clearly properly described the jurors'

paramount role in determining petitioner's sentence, and they also explicitly limited the

jurors' consideration of aggravating factors to the four which the State sought to prove.")

(internal citation omitted).

Similar to *Romano*, the trial court here properly instructed the jury on its role in

determining Petitioner's sentence (Ex. Z-7 at 282).  The trial court told the jury that it had

the duty "to follow the law that . . . will [be given] to you to render . . . a[n] advisory

sentence based upon your determination as to whether sufficient aggravating

circumstances exist to justify imposition of [the] death penalty and what is sufficient

mitigating circumstances to outweigh any aggravating circumstances you may find." *Id.* The trial court further instructed the jury that its advisory sentence should be based on the evidence presented. *Id.* at 283. The trial court's instructions limited the aggravating circumstances that the jury was allowed to consider to the four that were found in this case. *Id.* at 285-86. The court further informed the jury that if it found "the aggravating circumstances do not justify the death penalty", then the advisory sentence should be one of life imprisonment. *Id.* at 286.

Given the trial court's instructions regarding what the jury must consider in reaching its verdict and the fact that jurors are presumed to follow a trial court's instructions, *Richardson v. Marsh*, 481 U.S. 200, 206-07 (1987), Petitioner cannot prevail on this claim.

### 3.    *Improper Exclusion of Evidence During Penalty Phase*

Petitioner claims the trial court erred by excluding from evidence the State's prior offer of life in prison (Doc. No. 15 at 34). Petitioner raised this claim on direct appeal, and the Supreme Court of Florida found the claim was procedurally barred because it had been previously considered and rejected in a prior appeal. *Hitchcock VI*, 755 So. 2d 645. Petitioner is entitled to a determination of the merits of this claim because it was not procedurally defaulted in the state court. *Galindez*, 955 So. 2d at 525; *Merck*, 975 So. 2d at 1061 n.4.

At the *Spencer* hearing,[11] Petitioner offered into evidence an affidavit from an Assistant State Attorney which noted that that the State had made an offer of life imprisonment in exchange for a guilty plea prior to the guilt phase trial in 1977 (Ex. Z-9 at 17-18).  After argument from counsel, the trial court stated,

> I am going to allow it to be received as a proffered exhibit on behalf of the defense in these proceedings.  However, I will not consider it in mitigation as mitigation.  Well, I will not allow it to enter into my decision in this matter, the court being of the view that offers of settlement or plea negotiations are not a matter that the court can really take into consideration at this juncture.

(Ex. Z-9 at 22).  The court ultimately concluded that "information regarding Defendant's plea negotiations are irrelevant to this Court's sentencing decision,  . . . therefore, this information has not been considered." (Ex. Z-16 at 1117).

A sentencer should "not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65 (1978) (emphasis in original, footnote omitted).  However, this is not intended to "limit[] the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his

---

[11] In the sentencing order, the trial court stated that in *Hitchcock III*, 578 So. 2d at 689-91, the Supreme Court of Florida "previously concluded that [evidence of prior plea negotiations] was irrelevant to the jury's sentencing recommendation." (Ex. Z-16 at 1117).  Apparently, defense counsel had the same understanding and did not attempt to present evidence of the plea negotiations to the jury.  Petitioner does not argue that this constituted ineffective assistance of counsel, only that the trial court's failure to consider it was error.

offense." *Id.* at n. 12.   Thus, the only question is whether the State's offer of a plea is relevant evidence bearing on Petitioner's character, prior record, or the circumstances of his offense.

In *Hitchcock III*, the Supreme Court of Florida rejected this claim because "[w]e do not see how the fact that an offer might have been made is relevant because, obviously, Hitchcock rejected the offer, rendering it a nullity." *Hitchcock III*, 578 So. 2d at 690-91. Petitioner argued that it bears on the State's credibility, as evidence that it originally thought life imprisonment would be appropriate.   The court concluded, however, that prior failed plea negotiations have no bearing on Petitioner's character, prior record, or the circumstances of the offense.   *Id.*   No court, let alone the Supreme Court, has held that failed plea negotiations are relevant at a penalty phase hearing.[12]   *See Owens v. Guida*, 549 F.3d 399, 402, 419 (6th Cir. 2008).   Accordingly, Petitioner is not entitled to relief on this claim.

It is worth noting, however, that while it may not bear directly on a defendant's character, prior record, or the circumstances of the offense, prior plea negotiations may not

---

[12] In addition to the reasoning in *Hitchcock III*, there appear to be several other reasons for this.  In Florida, plea decisions are within the discretion of the prosecutor, prompting the Florida Supreme Court to conclude that the result of any negotiations would bear only on the credibility of the prosecutor, not the state--assuming credibility is a relevant concern. *Hitchcock III*, 578 So. 2d at 690-91.  Moreover, an offer of a life sentence may mean that the prosecutor thought the defendant was unworthy of death, but the offer may also have been made simply to conserve prosecutorial resources. *See Owens*, 549 F.3d at 420.  Finally, allowing a defendant to use plea negotiations in mitigation would discourage plea negotiations. *Id.* (citing *Ross v. State*, 717 P.2d 117, 112 (Okla. Cr. App. 1986).

be wholly irrelevant.  In *Owens*, for example, the defendant solicited several men to kill her husband. *Id*. at 403.  Prior to trial, the prosecutor offered Owens, and one of the alleged hitmen, a life sentence in return for a plea of guilty.  *Id*. Owens accepted the offer, but the hitman refused, so the offer was rescinded and both defendants were tried jointly for first degree murder.  *Id*. In closings, the prosecutor argued to the jury that Owens deserved the death penalty because she did not acknowledge and repent her criminal behavior.  *Id*. at 430.  Owens attempted to introduce the plea negotiations to rebut this claim, but the trial court refused to admit it and the Sixth Circuit affirmed.  A compelling dissent noted, however, that the plea negotiations were relevant mitigating evidence given the facts of the case.  *Id*. at 431.

As a general principle, plea negotiations are not relevant to mitigation because they relate to the prosecutor's conduct, not the defendant's.  And the facts of this case do not fit the reasoning of Judge Merritt's dissent in *Owens*.  Thus, it cannot be said that the trial court violated clearly established federal law when it rejected this evidence as irrelevant to mitigation.  Accordingly, this claim fails.[13]

### 4.      *Delay Between Arrest and Sentencing*

Petitioner claims that the delay between his arrest and resentencing violates his rights to speedy trial, due process, and cruel and unusual punishment (Doc. No. 15 at 35).

---

[13] Because "death is different," *Woodson v. North Carolina*, 428 U.S. 208, 305, 96 S.Ct. 2978 (1976), and because a sentencer must consider "any relevant mitigating evidence," *Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S. Ct. 869, 71 L.Ed.2d 1 (1982), a reasonable argument can be made that plea negotiations meet the relevance test in a death penalty case. Accordingly, the Court will grant a certificate of appealability as to this claim.

Petitioner raised this claim on direct appeal, and the Supreme Court of Florida found the claim was procedurally barred because it was raised in previous appeals. *Hitchcock VI*, 755 So. 2d at 645-46. As noted above, this Court declines to apply the procedural bar and will address the instant claim on the merits.

The Supreme Court stated in *Harrison v. United States*, 392 U.S. 219, 221 n. 4 (1968), that the petitioner's contention that he was denied his speedy trial rights was without merit because all of the delays of which the petitioner complained "occurred in the course of appellate proceedings and resulted either from the actions of the petitioner or from the need to assure careful review of an unusually complex case." Similar to *Harrison,* the delay of which Petitioner complains is a result of Petitioner's successful challenges to his first three penalty phrase proceedings.

Further, several federal circuit courts have noted that the Supreme Court has never held that a delay in sentencing or execution amounts to cruel and unusual punishment. *See Allen v. Ornoski*, 435 F.3d 946, 958-59 (9th Cir. 2006); *Chambers v. Bowersox*, 157 F.3d 560, 568-70 (8th Cir. 1998) (noting that death row delays do not constitute cruel and unusual punishment because such delays result from the "desire of our courts, state and federal, to get it right, to explore . . . any argument that might save someone's life"); *White v. Johnson*, 79 F.3d 432, 439 (5th Cir. 1996) ("The state's interest in deterrence and swift punishment must compete with its interest in insuring [sic] that those who are executed receive fair trials with constitutionally mandated safeguards . . . White has benefitted from this careful and meticulous process and cannot now complain that the expensive and laborious process

of habeas corpus appeals which exists to protect him has violated other of his rights.");

*Stafford v. Ward*, 59 F.3d 1025, 1028 (10th Cir. 1995).

Petitioner has not demonstrated that the delay in this case has violated any of his constitutional rights.  Accordingly, the instant claim is denied.

###    D.    Ground Four - Failure to Object to Driggers' Testimony

Petitioner alleges that trial counsel was ineffective for failing to object to the admission of Driggers' testimony during the fourth penalty phase proceeding (Doc. No. 15 at 37).  Petitioner asserts that Driggers' testimony was unfair, prejudicial character evidence that was irrelevant because it did not prove any aggravating circumstance.  *Id.* at 39.

During the 1996 penalty phase, Driggers testified that prior to the victim's death, the victim told her that Petitioner was doing inappropriate sexual things to her (Ex. Z-6 at 55). Driggers attempted to convince the victim to tell their mother what was happening.  *Id.* Driggers testified, however, that she and the victim confronted Petitioner, at which time Driggers told Petitioner that she was going to inform her mother of the inappropriate behavior.  *Id.*  Driggers testified that Petitioner threatened to rape and kill both girls if they told their mother.  *Id.*  Driggers further testified that the night prior to the victim's death she again asked the victim to tell their mother but the victim begged Driggers not to tell anyone.  *Id.* at 56.  Driggers opined that the victim was scared although she never specifically made such a comment.  *Id.*  Driggers assumed the victim was scared, similar to how she was scared by Petitioner's threats.  *Id.*  Driggers did not inform her mother, and

54

the following day the victim's body was found outside the home.  *Id.* at 57.  On cross-examination, defense counsel impeached Driggers with her prior statement in which she had stated that Petitioner only threatened to kill her and the victim and not rape and kill them.  *Id.* at 64.

Petitioner raised this claim in his Rule 3.851 motion (Ex. KK-10 at 572).  The trial court denied the claim stating that Driggers' testimony was admissible to establish two aggravating circumstances: (1) whether the murder was committed while Petitioner was engaged in a sexual battery; and (2) whether the murder was HAC (Ex. KK-12 at 1120).  Additionally, the court determined that Petitioner had not demonstrated prejudice.  *Id.* at 1121.  On appeal, the Supreme Court of Florida affirmed the lower court's denial of this claim.  *Hitchcock VIII*, 991 So. 2d at 353-354.  In rejecting this claim, the court concluded that Driggers' testimony was related to whether the victim consented to the sexual intercourse.  *Id.* at 355.  The court also found that Driggers could not "parse out" the threats Petitioner made to her when testifying regarding the threats he made to the victim because the threats were made simultaneously.  *Id.*  Finally, the court held that Petitioner was not prejudiced by Driggers' testimony because there was sufficient evidence absent Driggers' testimony to support a finding that the murder occurred during the commission of a sexual battery.  *Id.* at 356.

Generally, federal courts do not review a state court's admission of evidence in habeas proceedings.  *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) (citation omitted); *Grossman v. Crosby*, 359 F. Supp. 2d 1233, 1276 (M.D. Fla. 2005) ("The Florida

Supreme Court is the final arbiter of Florida law; federal courts must respect that law absent a constitutional violation.  A federal habeas court may not issue the writ on the basis of a state's interpretations of its own laws and rules, absent extreme circumstances.") (citing *Pulley v. Harris*, 465 U.S. 37, 42 (1984)).  A federal court "will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Mills*, 161 F.3d at 1289 (citation omitted). "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir. 1998) (quoting *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir. 1983)).

During a penalty phase for a capital felony case, any "evidence may be presented as to any matter that the court deems relevant to the sentence, and shall include matters relating to any of the aggravating or mitigating circumstances . . . ." § 921.141(1), Fla. Stat (1976).  Moreover, "[a]ny such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." *Id.*  Relevant evidence is defined as "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (1976).

Driggers' testimony that Petitioner threatened to kill her and the victim if they told anyone about the "inappropriate things" that occurred between himself and the victim was relevant to support a finding of the HAC aggravator.  The Supreme Court of Florida found in *Pooler v. State*, 704 So. 2d 1375, 1378 (Fla. 1997), that threats made by a criminal defendant

56

that he would kill the victim two days prior to her death were evidence of the HAC aggravator because the victim would have "ample time to ponder her fate" and thus showed the fear, emotional strain, and terror experienced by the victim. *See also Lucas v. State*, 613 So. 2d 408, 411 n. 5 (Fla. 1992) (finding the facts demonstrated that the murder was heinous, atrocious, or cruel were that several days preceding the murder, the defendant threatened the victim with death and sought out company of friends and weapons to prevent an attack); *Garcia v. State*, 492 So. 2d 360, 367 (Fla. 1986) (noting that the victims of a robbery were threatened with death if they did not produce money and concluding that the HAC aggravator was properly found because the threats caused the victims "fear and emotional strain . . . as they awaited execution.").

Driggers' testimony was also relevant to determine whether the murder was committed during the course of a sexual battery. Driggers' testimony was admissible to prove that the victim did not consent to the sexual intercourse but rather submitted because Petitioner had threatened to rape and kill her if she told her mother about the prior inappropriate conduct that had occurred. *See* § 794.011(4)(b), Fla. Stat. Thus, there is no basis to conclude that trial counsel acted deficiently by failing to object to Driggers' testimony. Nor could counsels' actions have resulted in prejudice, because the trial court would not have sustained an objection to this testimony.

Petitioner has not shown that Driggers' testimony rendered the penalty phase fundamentally unfair. Furthermore, any possible constitutional error would be harmless because there is no indication that this evidence had a substantial or injurious influence on

the jury's verdict.  *Brecht*, 507 U.S. at 622.  Therefore, this ground does not warrant habeas

relief.

> **E.**      **Ground Five**

>> **1.**      ***Failure to Present Statutory Mental Health Mitigation Evidence***

Petitioner contends that trial counsel was ineffective for failing to present evidence

of statutory mental health mitigation during his fourth penalty phase hearing (Doc. No. 15

at 42).  During Petitioner's fourth penalty phase, Dr. Toomer, a clinical and forensic

psychologist, was presented as a defense expert witness (Ex. Z-6 at 86).  After performing

a clinical interview, psychological testing, reading the record from the case, and speaking

to family members and others who had knowledge of Petitioner's history, Dr. Toomer

opined that Petitioner suffered from borderline personality disorder resulting in

"personality difficulties" for his entire life.  *Id.* at 95-98.  Dr. Toomer concluded that

Petitioner did not suffer from any major psychiatric illnesses, but did note that Petitioner's

"personality difficulties" would have affected him throughout his whole life--including at

the time of the crime--and would have resulted in Petitioner acting impulsively and being

unable to deal with stress.  *Id.* at 110-13.

Dr. Toomer was not asked specifically whether, in his expert opinion, the murder

was committed while Petitioner was under the influence of an extreme mental or emotional

disturbance, whether he believed that Petitioner could appreciate the criminality of his

conduct, or whether his ability to conform his conduct to the law was substantially

impaired.  In closing arguments, however, defense counsel did argue that the requirement

for statutory mental health mitigation had been met. (Ex. Z-7 at 273:8-10 and 274:5-23).

At the end of the fourth penalty phase, the trial court found the existence of one statutory mitigator, that Petitioner was only twenty years old at the time of the crime. (Ex. Z-16 at 1114).  It also found several non-statutory mitigating circumstances including, (1) that Petitioner was under the influence of alcohol and marijuana at the time of the crime, (2) that he suffered from life-long personality difficulties which influenced him at the time of the crime, and (3) he had committed the offense as a result of an unplanned impulsive act. (Ex. Z-16 at 1115).  Nonetheless, the trial court gave these circumstances very little weight. *Id.* More weight was afforded to the aggravating circumstances of which the trial court found four: (1) that the crime was committed while Petitioner was under a sentence of imprisonment, (2) that the crime was committed while Petitioner was engaged in the commission of a sexual  battery, (3) that it was committed for the purpose of avoiding or preventing a lawful arrest,  and (4) that it was especially atrocious, heinous, or cruel. (Ex. Z-16 at 1112-14).  In consideration of these circumstances, and the jury's recommendation,[14] the trial court sentenced Petitioner to death.

In 2001, Petitioner filed a motion for post-conviction relief in which he raised the instant ineffective assistance of counsel claim (Ex. KK-10 at 598-99). At a hearing on the motion, Dr. Toomer testified that he believed Petitioner met the standard for statutory mental health mitigation,  (Ex. KK-7 at 249:2-13), but was surprised he was not specifically

---

[14] The jury at Petitioner's fourth penalty phase recommended death by a vote of 10 to 2. (Ex. Z-16 at 1112).

asked whether Petitioner was under the influence of extreme mental or emotional disturbance at the time of the crime. (Ex. KK-7 at 238-241). Both the trial court and the Florida Supreme Court rejected Petitioner's arguments on this ground because defense counsel was not ineffective, and even if she were, there was no prejudice. *See Hitchcock v. State*, 991 So. 2d 337, 356 (Fla. 2008).

Even though Dr. Toomer was not asked specifically whether the statutory mental health mitigation factors were present, he did opine on the issue. At the fourth penalty phase, Dr. Toomer testified that Hitchcock suffered from lifelong personality difficulties which resulted in, *inter alia*, the lack of sufficient skills to make appropriate judgments. When asked whether these personality difficulties would have effected Hitchcock at the time of the crime, Dr. Toomer said "not only at the time of the crime, but his entire life." (Ex. Z-6 at 110:16-20). He further opined that,

> At the time of the incident Mr. Hitchcock was experiencing the effects of the forementioned borderline personality difficulties. That was characterized by his impulsivity that was a function of his inability to cope with an emotionally charged situation, his inability to deal with issues relating to abandonment and rejection and his inability to cope with inevitable stressors that individuals encounter. Mr. Hitchcock's behavior was characteristic of individuals who suffer from the personality deficits and dysfunction that we have described.

(Ex. Z-6 at 112). Moreover, defense counsel argued in closing that, "at the time of the incident [Petitioner] was under the influence of extreme mental or emotional disturbance and . . . it was an impulsive offense. Because one of the characteristics [Dr. Toomer] told you about was the impulsivity." (Ex. Z-7 at 274). In light of this evidence, counsel was not

60

deficient for failing to use the specific statutory language in questioning Dr. Toomer.[15]

Assuming counsel was deficient, Petitioner was not prejudiced.  The trial court found four statutory aggravating factors--which it afforded great weight--one statutory mitigating factor and several non-statutory mitigating factors, which it afforded little weight.  As the Florida Supreme Court noted, "the extremely weighty aggravation in this case would outweigh the mitigation, even if Dr. Toomer had specifically opined that the statutory mental health mitigating factors were applicable." *See See Hitchcock v. State*, 991 So. 2d 337, 358 (Fla. 2008).[16]

## 2.    *Failure to Present Evidence of Organic Brain Damage*

Petitioner claims that trial counsel was ineffective for failing to seek neurological testing in order to present evidence of his brain damage or impairment because this evidence was necessary to present a complete picture of his mental health (Doc. No. 15 at 56-57).  The Supreme Court of Florida found substantial evidence to support the trial court's finding that defense counsel was not deficient for failing to seek neurological testing

---

[15] Petitioner's defense counsel Kelly Sims testified that, although he was not privy to, or could not recall all the pre-trial discussions, there may have been a strategic decision to avoid that specific question because they were concerned that the prosecutor may present damaging evidence "under the guise of rebuttal to mitigation." *See See Hitchcock v. State*, 991 So. 2d 337, 356 (Fla. 2008).

[16] The Court also rejects Petitioner's claim that defense counsel was deficient for failing to retain a mental health expert until three weeks before the resentencing hearing. (Doc. No. 15 at 44-45).  Petitioner has not shown that the delay amounted to deficient performance considering that Dr. Toomer conducted a proper evaluation despite the time constraints.  Petitioner does not explain why additional time would have been helpful to the expert, or to his case.

because Dr. Toomer's psychological evaluation was adequate, and even if it was deficient, there was no prejudice. *Hitchcock VIII*, 991 So. 2d at 360.

This claim must fail because there is no evidence that counsel was ever informed about the possibility of brain damage. Dr. Toomer testified at the post-conviction hearing that he evaluated Petitioner and that the results of that test could have indicated brain damage. (Ex. KK-7 at 261-62). He could not remember whether or not he informed counsel of that possibility, only that it would have been standard procedure to go over the results of his evaluation with counsel. *Id.*; *see also*, *Hitchcock VIII*, 991 So. 2d at 359-60. Defense counsel Kelly Sims testified that he could not remember any conversations with Dr. Toomer on the subject of brain damage, and attorney Trish Cashman was not questioned about her decision not to pursue further testing. Accordingly, even if Petitioner could show that he had brain damage--and expert testimony at the post-conviction hearing conflicted--there is no evidence that counsel was aware of that possibility.

Further, Petitioner cannot show that he was prejudiced by any failure to investigate the possibility of brain damage. At most, he can show only vague speculation that he suffered from brain damage at the time of the murder. Several experts testified that that Petitioner was of normal intelligence, and Dr. Toomer testified at the fourth penalty phase that he did not suffer from any severe mental illness. Thus, Petitioner will be denied relief as to this claim.

### F.    Ground Six

Petitioner claims that appellate counsel was ineffective for failing to argue on appeal

that a *Caldwell* violation occurred (Doc. No. 15 at 61).   Petitioner asserts that the jury

instructions given in this case diminished the jury's responsibility and minimized the jury's

role in the sentencing process.  *Id.* at 62-63.  Petitioner raised this claim in his Rule 3.851

motion for post-conviction relief, the Court denied the claim, finding counsel was not

deficient for failing to raise this issue because the jury instructions properly advised the

jury of the importance of its role, correctly stated the law, and did not denigrate the role

of the jury. *Hitchcock VIII*, 991 So. 2d at 361-64.

Petitioner has not demonstrated that he is entitled to relief on this claim.  In *Caldwell*

*v. Mississippi*, 472 U.S. 320 (1985), the Supreme Court of the United States found "it is

constitutionally impermissible to rest a death sentence on a determination made by a

sentencer who has been led to believe that the responsibility for determining the

appropriateness of the defendant's death rests elsewhere."   To show that a trial court

violated *Caldwell*, a defendant must show that the remarks to the jury "'improperly

described the role assigned to the jury by local law.'" *Carr v. Schofield*, 364 F.3d 1246, 1258

(11th Cir. 2004) (quoting *Dugger v. Adams*, 489 U.S. 401, 407 (1989)).  No *Caldwell* violation

exists when a jury was not "affirmatively misled regarding its role in the sentencing

process." *Id.* (citing *Romano*, 512 U.S. at 9).   A reference to or description of the jury's

verdict as an advisory one or as a recommendation does not constitute a *Caldwell* violation

as it "accurately characterize[s] the jury's and judge's sentencing roles under [state] law."

*Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir. 1997).

During the penalty phase, the trial court instructed the jury as follows regarding

their role in determining Petitioner's sentence:

> As you have been told, your final decision as to what punishment shall be imposed is the responsibility of me as the judge. However, it is your duty and responsibility to follow the law that I will now give you to render to me an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of [the] death penalty and what is [sic] sufficient mitigating circumstances to outweigh any aggravating circumstances you may find to exist.

(Ex. Z-7 at 282).

The jury instructions provided during the penalty phase of the trial accurately explained the jury's role under Florida law. *See* Fla. Std. Jury Inst. (Crim.) 7.11; *Archer v. State*, 673 So. 2d 17, 21 (Fla. 1996) (holding the Florida Standard Jury Instructions fully advise the jury of the importance of its role). The state court did not indicate or imply that the jury recommendation was superfluous or that the importance of the jury's decision was lessened merely because it was a recommendation. Thus, no *Caldwell* violation occurred, and Petitioner's appellate counsel cannot be deemed deficient for failing to raise a non-meritorious claim.

### G.    *Ground Seven*

Petitioner claims that trial counsel was ineffective for failing to object to and argue against the aggravating circumstance that the murder occurred during the commission of a sexual battery (Doc. No. 15 at 65). Petitioner raised this claim in his Rule 3.851 motion (Ex. KK-10). The Supreme Court of Florida rejected this claim, finding that there was no requirement that the murder occur at the same time as the underlying sexual battery. *Hitchcock VIII*, 991 So. 2d at 361-62.

64

Petitioner also claims that appellate counsel was ineffective for failing to challenge the trial court's finding in this regard. Petitioner raised this claim in a state habeas petition (Ex. OO). The Supreme Court of Florida rejected this claim as well, finding that if appellate counsel had raised this claim on direct appeal, it would have been rejected for the reasons discussed in relation to Petitioner's ineffective assistance of counsel claim. *Hitchcock VIII*, 991 So. 2d at 363-64. For the reasons discussed *supra*, neither claim has merit.

Finally, Petitioner also argues that trial counsel was ineffective for failing to request a jury instruction on the specific elements of sexual battery. In *Occhicone*, 570 So. 2d at 906, the Supreme Court of Florida explained that the elements of the underlying felony supporting the felony murder should be given to the jury when the State argues the felony murder aggravating circumstance has been proven beyond a reasonable doubt. However, the *Occhicone* court also determined that any error in failing to instruct a jury in this manner was subject to harmless error analysis. *Id.*

In the instant case, the trial court did not instruct the jury on the individual elements of the crime of sexual battery (Ex. Z-7 at 286), and its failure to do so was error. However, that error was harmless under a *Brecht* analysis because it did not have a substantial or injurious effect on or influence the sentence. *See Grossman*, 359 F. Supp. 2d at 1276

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

IV.    *Certificate of Appealability*

A prisoner seeking to appeal a  district court's final order denying his petition for

writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability on all grounds except Ground 3. *See supra*, note 13.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Amended Petition for Writ of Habeas Corpus filed by James Hitchcock (Doc. No. 15) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2.      Petitioner is **GRANTED** a Certificate of Appealability as to Ground 3,[17] but

        **DENIED** a Certificate of Appealability on all other grounds.

3.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 20th day of September, 2012.

Copies to:
OrlP-3 9/20
Counsel of Record
James Hitchcock

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

---

[17] *See supra*, note 13.